UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 20-cv-3168

JOHN DOE,

Plaintiff,

-against-

COLORADO STATE UNIVERSITY;
COLORADO STATE UNIVERSITY BOARD OF GOVERNORS;
JOYCE MCCONNELL, individually and in her official capacity as the President of CSU;
LINDY L. HENSON, individually and in her official capacity as the Assistant Director of Student Conduct Services at CSU;
DIANA PRIETO, individually and in her official capacity as the Vice President for Equity, Equal Opportunity, and Title IX Programs, as well as the interim Title IX Coordinator at CSU;
AUDREY SWENSON, individually and in her official capacity as Title IX Investigator at CSU;
MURRAY OLIVER, individually and in her official capacity as the Chair of the Appeal Committee at CSU.

Defendants.

_____

COMPLAINT AND JURY DEMAND

_____

Plaintiff John Doe[1] (hereinafter referred to as "Plaintiff" or "John Doe"), by his attorneys Igor Raykin and Alan Davis of Kishinevsky & Raykin, as and for his Complaint, respectfully alleges as follows:

_____

[1] Plaintiff herewith files a motion to restrict access to information contained within the Complaint.

## THE NATURE OF THIS ACTION

1.    This case arises out of the actions taken and procedures employed by Defendant Colorado State University ("Defendant CSU" or "CSU") concerning false allegations made against Plaintiff, a male freshman student at CSU of physical abuse with fellow freshman CSU students Jane Roe ("Ms. Roe") and Jane Smith ("Ms. Smith").

2.    These allegations relate to consensual physical and sexual activity that occurred during the fall semester of the 2019-2020 school year at CSU.

3.    After a faulty investigation by CSU, which did not meet minimum standards of due process, Plaintiff lost his good-standing with CSU until August of 2021.

4.    CSU investigated and adjudicated Plaintiff in an arbitrary and capricious manner and discriminated against Plaintiff on the basis of his male sex. CSU failed to adhere to portions of its own guidelines and policies, which themselves are insufficient to protect the rights of male students.

5.    As a result of Plaintiff's loss of good standing at CSU, Plaintiff has sustained damage to his future education and career prospects as a result of the reputational harm suffered as a result of CSU's branding him responsible for physical abuse he did not commit. Plaintiff has already lost a yearly scholarship through the Reserve Officers' Training Corps ("ROTC") and may have difficulty in enlisting in the Air Force or other branch of the military due to this adjudication on his student record at CSU. The sacrifices made by Plaintiff in order for him to receive a scholarship and enlist in the military after graduation have been wasted. Additionally, as a result of Defendants' actions, Plaintiff has suffered physical, psychological, emotional and reputational damages, economic injuries and the loss of educational and career opportunities.

6.    Plaintiff therefore brings this action to obtain relief based on causes of action for, among other things, violations of Title IX of the Education Amendments of 1972, pursuant to 42

U.S.C. § 1983 as a result of violations of the 5th and 14th Amendment Due Process, breach of contract and other state law causes of action.

## THE PARTIES

7.      Plaintiff is a natural person, citizen of the United States, and resident of the State of Colorado. During the events described herein, Plaintiff was a student at the Defendant CSU and resided on CSU's campus in Fort Collins, Colorado.

8.      Defendant Colorado State University is a public, coeducational university with an address of 2545 Research Boulevard, Fort Collins, CO 80526.

9.      Defendant Board of Governors is the governing body of Defendant CSU. It is composed of nine (9) voting members, who are appointed by the Governor for a maximum of two four-year terms, and one (1) student member and one (1) faculty member from each CSU, CSU Pueblo, and CSU Global campuses, who are non-voting members. The student and faculty members are elected yearly.

10.      Defendant Joyce McConnell is an individual, residing in the State of Colorado and was the President of CSU, at all relevant times herein.

11.      Defendant Lindy L. Henson is an individual, residing in the State of Colorado and was the Assistant Director of Student Conduct Services at CSU, at all relevant times herein.

12.      Defendant Diana Prieto is an individual, residing in the State of Colorado and was the Vice President for Equity, Equal Opportunity, and Title IX Programs, as well as the interim Title IX Coordinator at CSU, at all relevant times herein.

13.      Defendant Audrey Swenson is an individual, residing in the State of Colorado and was a Title IX Investigator at CSU, at all relevant times herein.

14.      Defendant Murray Oliver is an individual, residing in the State of Colorado and was the Chair of the Appeal Committee at CSU, at all relevant times herein.

15.     Plaintiff and the Defendants are sometimes hereinafter collectively referred to as the "Parties."

## JURISDICTION AND VENUE

16.    This Court has federal question, diversity and supplemental jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332 and under 28 U.S.C. § 1367 because: (i) the federal law claims arise under the Constitution and statutes of the United States; and (ii) the state law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the United States Constitution.

17.    This Court has jurisdiction over the Defendants because this action arises under the First, Fifth, and Fourteenth Amendments to the Constitution of the United States, and under 20 U.S.C. § 1681, *et. seq.* and 42 U.S.C. § 1983, as hereinafter more fully appears.

18.    The jurisdiction of the Court is predicated upon Article III of the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3).

19.    Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because the Defendant CSU is considered to reside in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

20.     Plaintiff was accepted to CSU as a member of the class of 2023. Upon his acceptance, CSU provided Plaintiff with copies of its various school policies, including its:

a.     Code of Student Conduct which is available on the School's website at https://resolutioncenter.colostate.edu/wp-content/uploads/sites/32/2018/08/Student-Conduct-Code-v2018.pdf.

b.      Title IX Policies which is available on the School's website at http://

policylibrary.colostate.edu/policy.aspx?id=773.

21.      Several alleged incidents were reported that resulted in the Plaintiff losing his good standing with the University.

22.      However, as will be explained below, CSU did not follow its own procedures, violated Plaintiff's right to due process, and discriminated against Plaintiff because of his gender.

**<u>Mr. Doe's Relationship with Ms. Roe</u>**

23.      During the fall semester of the 2019-2020 school year, Mr. Doe dated both Ms. Roe and Ms. Smith.

24.      Mr. Doe, Ms. Roe, and Ms. Smith all lived in the Honors dormitory in Academic Village during the fall semester of the 2019-2020 school year.

25.      Mr. Doe began dating Ms. Roe in September of 2019.

26.      Mr. Doe and Ms. Roe dated for approximately one-month.

27.      Ms. Roe made several allegations against Mr. Doe during their brief relationship.

28.      Ms. Roe accused Mr. Doe of leaving hickeys on Ms. Roe on occasion.

29.      Ms. Roe accused Mr. Doe of sometimes being physically assertive in their consensual relationship; for example: biting Ms. Roe's lip while they were making out and squeezing her thigh hard.

30.      Mr. Doe ended the relationship with Ms. Roe in early October of 2019.

**<u>Mr. Doe's Relationship with Ms. Smith</u>**

31.      Mr. Doe began dating Ms. Smith in late October of 2019.

32.      Mr. Doe and Ms. Smith dated for approximately one and half months.

33.      Ms. Smith made allegations against Mr. Doe during their brief relationship.

34.     Ms. Smith accused Mr. Doe of biting her lip too hard when they were consensually making out.

35.     Ms. Smith accused Mr. Doe of touching parts of her body hard while being physically intimate; specifically, she accused Mr. Doe of grabbing her butt hard.

36.     Ms. Smith accused Mr. Doe of picking her up and making her wrap her legs around him on one occasion.

37.     Mr. Doe ended the relationship with Ms. Smith on or about December 9, 2019.

**The Title IX Investigation**

38.     On December 10, 2019 Ms. Roe and Ms. Smith spoke with each other about their relationships with Mr. Doe.

39.     On February 10, 2020, Ms. Roe reported Mr. Doe to CSU accusing him of sexual assault.

40.     CSU reached attempted to contact Ms. Roe and closed the report on March 17, 2020, as Ms. Roe had not responded.

41.     On March 3, 2020, Ms. Smith reported Mr. Doe to CSU accusing him of sexual assault triggering a Title IX investigation. Ms. Roe reached out to CSU on March 7, 2020, asking that she be included in this investigation.

42.     Ms. Audrey Swenson ("Ms. Swenson" or "Investigator") was the Title IX investigator assigned to this case and interviewed a total of ten (10) individuals between March 3, 2020, and May 13, 2020, not including Mr. Doe, Ms. Doe, or Ms. Smith.

43.     All of the individuals interviewed were friends and/or acquaintances of Ms. Roe and/or Ms. Smith.

44.     On March 25, 2020, Ms. Swenson interviewed Mr. Doe. During this interview, Mr. Doe provided Ms. Swenson with the names of three (3) individuals for her to interview on his behalf. Ms. Swenson did not reach out to any of these individuals for an interview.

45.     Ms. Swenson also collected documentation and text messages from Mr. Doe, Ms. Roe, and Ms. Smith. Included in these texts were messages from Ms. Roe asking Mr. Doe to delete all of their communications, as they contained exculpatory information beneficial to Mr. Doe. This was after the school had started its Title IX investigation.

46.     Ms. Swenson did not gather any photographs of the alleged bruises on Ms. Roe or Ms. Smith.

47.     Ms. Swenson also received information during her investigation that, while the investigation was pending, Ms. Roe deleted all electronic communications she had with Mr. Doe and asked him to do the same.

48.     Many of these texts and other forms of electronic communication were exculpatory information for Mr. Doe's defense.

49.     Ms. Swenson determined that both Ms. Roe's and Ms. Smith's statements were credible, despite the fact she received contradictory information from both parties, as well as Ms. Roe and Ms. Smith being heavily under the influence of alcohol during some of the alleged events.

50.     On August 5, 2020, Mr. Doe received an email with a letter attached indicating that a hearing had been scheduled for August 11, 2020 from Ms. Lindy Henson ("Ms. Henson"), Assistant Director, Student Conduct Services at the Student Resolution Center. The letter stated that Mr. Doe was alleged to have violated the CSU Student Code by committing Abusive Behavior and Sexual Misconduct. Attached to the letter were over 90-pages of single-spaced

information regarding the investigation, interview notes, and other various pieces of supplemental information acquired by Ms. Swenson during her investigation.

51.     All of the information regarding the investigation was redacted and Mr. Doe had no idea of who many of the individuals involved in the investigation were.

52.     Mr. Doe had a school test on August 7, 2020 ,and spent all day on August 6, 2020, preparing for this test.

53.     Mr. Doe had three (3) days to review all of the evidence and prepare a defense for his hearing.

54.     Mr. Doe attended his hearing on August 11, 2020. Most of the time in the hearing was spent lecturing Mr. Doe about personal responsibility and community impact, rather than allowing him to present his defense.

55.     Mr. Doe also told Ms. Henson prior to the hearing that he had not had an opportunity to review the entire report. Rather than re-schedule, Ms. Henson conducted the hearing, regardless of this information.

56.     CSU's Student Code of Conduct indicates that the student will have at least two (2) business days to prepare for the hearing unless the student…and the Hearing Officer agree in writing to waive the two (2) day business notice.

57.     Ms. Henson never told Mr. Doe about re-scheduling the hearing to give Mr. Doe more time to prepare, or that this was even an option, only that he could reschedule if he was unable to attend.

58.     Ms. Henson never told Mr. Doe verbally or in writing that he could request more time to prepare for his hearing, even after he had informed her that he had not been able to read through the entire report.

59.     Mr. Doe was told by Ms. Henson prior to the conclusion of his hearing that he would be losing his good standing with CSU. This was prior to taking any time to reflect on the information provided by Mr. Doe and comparing it with the information she had already received.

60.     On August 25, 2020, Mr. Doe received a letter from Ms. Henson via email. This letter informed Mr. Doe that he was found to be responsible for two (2) acts of Abusive Behavior and found not responsible for Sexual Misconduct.

61.     Nowhere does the letter indicate any specific acts that Mr. Doe was found responsible for; rather, Ms. Henson found that Mr. Doe "pushed boundaries and [was] too rough at times without seeking consent." Ms. Henson does not provide any dates of when these alleged acts occurred, what acts she was referring to, whom the alleged acts were against, or why she found Mr. Doe's version of events incredible compared to Ms. Roe's or Ms. Smith's.

62.     This letter also informed Mr. Doe that he had lost his good standing with CSU until August 25, 2021, as Ms. Henson had told him would be the case prior to the conclusion of the hearing.

63.     Mr. Doe filed an appeal with the School on September 4, 2020. Mr. Doe filed this appeal on the grounds that:

    a.     The hearing was not conducted fairly; and

    b.     The sanctions imposed were not appropriate based on the totality of the circumstances.

64.     On September 21, 2020, Mr. Doe received a letter from Mr. Murray Oliver ("Mr. Murray"), Chair of the Appeal Committee at CSU, via email.

65.     The letter to Mr. Doe indicated that his request for an appeal had been denied because "overall record of documentation surrounding the disciplinary decision in your case

affirms the University Hearing Officers' findings…" and that "the sanctions applied to [him] were appropriate based on the totality of the circumstances." Mr. Murray provides no further details of explanation as to why Mr. Doe's request for an appeal was being denied.

### The Investigative Report Was Incomplete, Could Not Reasonably Lead to the Conclusion of Wrongdoing by Plaintiff, And Was Motivated by Anti-Male Bias

66.     CSU's Title IX Policies, § 11 states all involved in the investigation and hearing "will treat all those involved in a proceeding pursuant to this policy fairly and equitably. Differences between one party's rights and options and another party's rights and options will never be based on sex." Plaintiff's investigation and hearing in this matter was not conducted in accordance with this policy.

67.     CSU's Code of Student Conduct states that a "Hearing Officer determines the finding of responsibility for each charge based on the preponderance of information standard—whether it is more likely than not that the Responding Party engaged in prohibited conduct."

68.      CSU's Code of Student Conduct states that a:

> Hearing Officer will consider the totality of information in each case when determining appropriate sanctions. This includes but is not limited to the severity of the incident, the student/organization's student conduct record, demonstrated understanding of the impact of their behavior, and the role that alcohol and drugs may have played in an incident.

69.     CSU's Code of Student Conduct defines "abusive behavior" as:

    a.     Threatening or inflicting bodily harm upon any person or animal, or acting in a manner that creates a risk of bodily harm to any person, including oneself, or an animal;

    b.     Threats, intimidation, coercion, or other unwelcome behavior, through any method of communication directed at an individual or individuals that is so severe, persistent, or pervasive such that it has the purpose or effect of

unreasonably interfering with a person's academic or work performance, or a person's ability to participate in or benefit from the university's programs, services, opportunities, or activities, when viewed through both an objective and subjective standard;

c.    Any form of abusive behavior (as listed above) specific to current or former intimate partners; or

d.    Hazing, which includes any action that endangers the mental, physical, or emotional health or safety of a student, or which destroys or removes public or private property, for the purpose of initiation, admission into, affiliation with, or as a condition for continued membership in a group or student organization, or participating in, condoning, encouraging, requiring, or allowing an opportunity for hazing. A hazing violation may occur even when the victim expressed or implied consent.

70.    Ms. Swenson took the time to interview ten (10) separate individuals, all of whom were acquaintances and/or friends of Ms. Roe and/or Ms. Smith.

71.    When Mr. Doe asked that she interview three (3) additional individuals who could provide information for his defense, his request was ignored and disregarded.

72.    Ms. Roe and Ms. Smith also made several contradictory statements in their interviews, which were brushed off or completely ignored by Ms. Swenson.

73.    The School did not even seem concerned at all that Ms. Roe specifically asked Mr. Doe to delete her contact information from his phone and any communications that they had. Ms. Roe asked Mr. Doe to delete evidence from his phone, as well as deleting the evidence from her phone, that could assist his defense, and this fact was essentially ignored by the School.

74.     Mr. Doe was also never provided un-redacted statements from the individuals interviewed and had to do his best to determine who was saying what about whom.

75.     It is clear that Ms. Swenson had already determined Mr. Doe's prior to gathering a complete set of evidence and only interviewed those individuals whose statements would support the narrative provided by Ms. Roe and Ms. Smith.

76.     Mr. Doe was also given inadequate time to prepare for his hearing and CSU allowed the hearing to proceed anyway.

77.     Mr. Doe made it very clear to Ms. Henson that he had not had enough time to review the entire report prior to the hearing. Ms. Henson did not explain to Mr. Doe he could request additional time; rather, she proceeded with the hearing knowing that Mr. Doe had not reviewed the entire case.

78.     Ms. Henson had already determined before the hearing ever concluded that Mr. Doe was "responsible" for the acts he was accused of, as she specifically told him this information prior to the hearing ever being concluded.

79.     It is clear that Ms. Henson had predetermined Mr. Doe's responsibility prior to ever meeting with him.

80.     Moreover, it is also clear that Ms. Henson did not cater a punishment based on the totality of the circumstances, as she had already decided what the punishment was going to be before ever meeting or hearing from Mr. Doe.

81.     CSU also did not fairly review Mr. Doe's appeal. Rather than give a valid explanation regarding their decision, Mr. Doe was provided a blanket statement with no reasoning as to why this determination was made.

**The conclusion that the Plaintiff violated CSU's policy on Abusive Behavior is without basis.**

82.     All of the accusations made against Mr. Doe stemmed from consensual relationships and consensual physical acts.

83.     The School has yet to explain to Mr. Doe when he specifically committed the act of abusive behavior, what this act(s) was, and whom the act(s) was against.

84.     The only information Mr. Doe has ever received as to why he was punished was that he "pushed boundaries and [was] too rough at times without seeking consent."

**As a Result of This Investigative Report and Disciplinary Hearing, Plaintiff Lost his Good Standing with the University**

85.     Mr. Doe's punishment was unduly harsh and did not follow the School's Code of Conduct.

86.     CSU's Student Code of Conduct requires that a hearing officer determine a punishment based on the totality of the circumstances. These punishments range from discretionary sanctions (such as taking a class, restorative justice, housing modifications, and conflict resolution) to disciplinary sanctions (such as loss of good standing, suspension, and expulsion).

87.     Disciplinary sanctions will show up on a student's educational record at CSU while a discretionary sanction would not.

88.     It is clear that Ms. Henson did not look at totality of the circumstances after she found Mr. Doe responsible and took away his good standing, as she informed Mr. Doe this would be the outcome prior to the meeting with him ever concluding.

89.     Mr. Doe had never had any other write-ups, founded or not, with the School prior to these accusations. In fact, Mr. Doe maintained a 4.0 grade point average even with the Title IX investigation pending.

90.     Ms. Henson never asked or provided Mr. Doe with the opportunity to discuss his background, his academics, extracurricular activities prior to determining his punishment and in violation of CSU's Student Code of Conduct.

## AS AND FOR A FIRST CAUSE OF ACTION
### Violation of Title IX of the Education Amendments of 1972
### (Against Defendant Colorado State University and Colorado State University Board of Governors)

91.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein

92.     Title IX of the Education Amendments of 1972 provides, in relevant part, that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

92.     Title IX of the Education Amendments of 1972 applies to an entire school or institution if any part of that school receives federal funds; hence, athletic programs are subject to Title IX of the Education Amendments of 1972, even though there is very little direct federal funding of school sports.

93.     Upon information and belief, Defendant CSU receives federal funding for research and development.

94.     Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the *prompt and equitable resolution* of student... complaints alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice) (*emphasis added*). Such

prohibited actions include all forms of sexual harassment, including sexual intercourse, sexual assault, and rape.[2]

95.    The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also *"[accord] due process to both parties involved..."[3]*

96.    The "prompt and equitable" procedures that a school must implement to "accord due process to both parties involved" must include, at a minimum:

- "Notice . . . of the procedure, including where complaints may be filed";

- "Application of the procedure to complaints alleging [sexual] harassment...";

- "Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence";

- "Designated and reasonably prompt timeframes for the major stages of the complaint process"; and

- "Notice to the parties of the outcome of the complaint......"[4]

97.    A school also has an obligation under Title IX to make sure that all employees involved in the conduct of the procedures have "adequate training as to what conduct constitutes sexual harassment, which includes "alleged sexual assaults." [5]

---

[2] *See generally* U.S. Dep't of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties -- Title IX* (2001) at 19-20, 21 & nn.98-101.

[3] *Id.* at 22 (emphasis added).

[4] *Id.* at 20.

[5]  *Id.* at 21.

98.     Based on the foregoing, *supra,* at ¶¶ 20-90, Defendant CSU deprived Plaintiff, on the basis of his sex, of his rights to due process and equal protection through the improper administration of and/or the existence, in its current state, of Defendant CSU's guidelines and regulations.

99.     Based on the foregoing, *supra,* at ¶¶ 20-90 Defendant CSU failed to conduct an adequate, reliable, and impartial investigation when it conducted its investigation of the Incident and subsequent investigation and review, in a manner that was biased against Plaintiff.

100.    As outlined above, the outcome was predetermined and simply a motion into a biased, prejudiced and implicitly unfair process.

101.    Based on the foregoing, Defendant CSU imposed an unwarranted and excessive sanction on Plaintiff as a result of an erroneous outcome reached by a flawed investigation.

102.    Based on the foregoing, male respondents in sexual misconduct cases at Defendant CSU are discriminated against solely on the basis of sex.  They are invariably found guilty, regardless of the evidence, or lack thereof.

103.    Based on the foregoing, Plaintiff was subjected to a biased, prejudiced and explicitly unfair process in violation of Title IX.

104.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Violation of the Fifth and  Fourteenth Amendments of the United States Constitution**
**Procedural Due Process, 42 U.S.C. § 1983**
**(Against Defendants Joyce McConnell, Lindy L. Henson, Diana Prieto, Audrey Swenson,**
**and Murry Oliver, each individually)**

105.    Plaintiff repeats every prior allegation as if fully set forth herein.

106.    On April 4, 2011, the United States, by and through its agent the United States Department of Education, sent a 19-page "Dear Colleague" letter to colleges and universities all

over the country, stating that "sexual violence" on campus was a form of "sexual harassment prohibited by Title IX" ("Dear Colleague Letter").

107.    Reversing previous federal policy, the Dear Colleague Letter threatened colleges with hundreds of millions of dollars in de-funding penalties if they did not immediately begin investigating and adjudicating allegations of campus sexual assault under detailed procedures and terms dictated by the federal government.

108.    For example, and without limitation, as a result of the Dear Colleague Letter and later statements, actions, and directives issued by the United States, colleges were as of 2015:

(i)     Required to investigate and adjudicate campus sexual assault allegations regardless of whether the complainant reported his or her allegations to the police (whereas previous federal policy had permitted colleges to allow law enforcement to handle allegations of sexual assault);

(ii)    Required to establish a coordinated and centralized investigative and adjudicative procedure according to detailed rules mandated by the federal government and headed by a Title IX coordinator;

(iii)   Required to protect the anonymity of students accusing another student of sexual assault if the student making the allegations so requests;

(iv)    Required to apply a preponderance of the evidence standard when adjudicating such allegations (whereas previously colleges frequently applied higher evidentiary standards, such as the clear and convincing evidence standard);

(v)     Required not to allow cross-examination by the accused student;

(vi)    Required or strongly encouraged to expel students that the college finds to have engaged in unconsented-to sexual intercourse with another student.

109.    Since 2011, the United States has consistently reaffirmed and adhered to the threat of substantial monetary penalties made in the Dear Colleague Letter.  For example, in July 2014, former DOE Assistant Secretary for Civil Rights Catherine Lhamon stated that she would

strip federal funding from any college found to be non-compliant with the requirements of the Dear Colleague Letter. "Do not think it's an empty threat," Lhamon warned.

110.     Upon information and belief, Defendant CSU so acted in response to the federal government's threat that colleges refusing to comply would be found in violation of Title IX and be subject to extremely substantial, indeed crippling, monetary penalties.

111.     Accordingly, Defendant CSU was coerced by the United States into complying with the Title IX investigative and adjudicatory process mandated by the Dear Colleague Letter and by subsequent federal actions, statements, and directives.

112.     Defendants' need and desire to acquiesce to former President Obama's administration's "Dear Colleague" letter and trample the due process rights of its students is confirmed by the current United States' Department of Education Secretary, Betsy Devos, who has recently been quoted as saying "a system without due process serves no one". **https://www.google.com/amp/amp.usatoday.com/story/493320001/**

113.     Defendant CSU applied the investigative and adjudicatory process dictated to it by the federal government when it investigated and adjudicated Ms. Roe's and Ms. Smith's complaints against Plaintiff. .

114.     Defendant CSU has taken steps to ensure compliance with the Dear Colleague Letter, out of fear of negative publicity and rescission of federal funds.

115.     In the course of such investigation and adjudication, Defendant CSU flagrantly violated Plaintiff's clearly established rights under the Due Process Clause of the Fourteenth Amendment through its repeated acts of gender bias and of deprivation of the minimal requirements of procedural fairness.

116.    Based on the foregoing, CSU deprived Plaintiff of an opportunity to be heard and participate in a meaningful manner in violation of his fundamental procedural rights and clearly established law.

117.    Based on the foregoing, in removing the Plaintiff form good standing with CSU deprived Plaintiff of his guaranteed liberty and property rights without due process.

118.    Because CSU is a public school owned by the State of Colorado, Plaintiff is entitled to due process under the Fifth and Fourteenth Amendments of the U.S. Constitution. As a public university, CSU is a state actor to whom the Constitutional requirements of due process attach.

119.    Longstanding caselaw holds that an educational interested is a protected property interest for purposes of due process analysis. Therefore, when CSU investigated and adjudicated Ms. Roe's and Ms. Smith's abusive behavior complaints against Plaintiff, and when it pre-determined the outcome and penalty prior to meeting with Mr. Doe, CSU was required provide due process.

120.    During the investigation and adjudication, CSU failed to provide the minimum procedures required by the Due Process Clause of the Fifth and Fourteenth Amendment.

121.    By refusing to speak to any of the Plaintiff's witnesses, CSU prevented Plaintiff from presenting information that could have prevented a finding of responsibility and loss of good standing.

122.    By preventing Plaintiff from questioning witnesses in any way or form or provide any relevant evidence as to Ms. Roe's or Ms. Smith's credibility and motive, Defendant failed to provide a necessary process.

123.    CSU investigators exhibited gender bias rather than neutrality.

124.    Because CSU risked a loss of federal funds if it found Plaintiff not responsible, CSU had a pecuniary interest in the outcome of the adjudication.  Such a pecuniary interest runs afoul of the due process requirement of impartiality.

125.    Based on the foregoing, CSU was a state actor when it violated the rights and guarantees set forth in the Fifth and Fourteenth Amendment of the United States Constitution during the investigation and adjudication of Jane Roe's sexual misconduct complaint against Plaintiff.

126.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A THIRD CAUSE OF ACTION
### Breach of Contract
### (Against Defendants Colorado State University and Colorado State University Board of Governors)

127.    Plaintiff repeats every prior allegation as if fully set forth herein.

128.    Based on the aforementioned facts and circumstances, CSU created express and implied contracts when it offered, and he accepted, admission to CSU and paid the required tuition and fees.

129.    Based on the aforementioned facts and circumstances, Defendant CSU breached express and/or implied agreement(s) with Plaintiff.

130.    Defendant CSU committed several breaches of its agreements with Plaintiff during the investigation and hearing process, *inter alia* by (a) failing to investigate the allegations in an unbiased manner, (b) failing to afford him due process in defending himself against false charges, (c) failing to provide a punishment based on the totality of the circumstances, and (d) failing to allow him to appeal the severity of the sanction.

131.    As a direct and proximate result of the above conduct, actions and inactions, Plaintiff has suffered physical, psychological, emotional and reputational damages, economic injuries and the loss of educational and career opportunities and other direct and consequential damages.

132.    Plaintiff is entitled to recover damages for Defendant CSU's breach of the express and/or implied contractual obligations described above.

133.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### AS AND FOR A FOURTH CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing
### (Against Colorado State University and Colorado State University Board of Governors)

134.    Plaintiff repeats every prior allegation as if fully set forth herein.

135.    Based on the aforementioned facts and circumstances, Defendant CSU acted in bad faith when it meted out a disproportionate Sanction of removing Plaintiff's Good Standing with the School notwithstanding the flawed investigative process and lack of evidence in support of Jane Roe's claims of sexual misconduct.

136.    Based on the aforementioned facts and circumstances, Defendant CSU breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with Plaintiff.

137.    As a direct and foreseeable consequence of these breaches, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

138.    Plaintiff is entitled to recover damages for Defendant CSU's breach of the express and/or implied contractual obligations described above.

139.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Promissory Estoppel
### (Against Colorado State University and Colorado State University Board of Governors)

140.    Plaintiff repeats every prior allegation as if fully set forth herein.

141.    Defendant CSU's various policies constitute representations and promises that it should have reasonably expected to induce action or forbearance by Plaintiff.

142.    Defendant CSU expected or should have expected Plaintiff to accept its offer of admission, incur tuition and fees expenses, and choose not to attend other colleges based on its express and implied promises that Defendant CSU would not tolerate, and Plaintiff would not suffer, discrimination or harassment by fellow students or faculty members and would not deny Plaintiff his procedural rights should he be accused of a violation of Defendant CSU's policies.

143.    Plaintiff relied to his detriment on these express and implied promises and representations made by Defendant CSU, by choosing to attend Defendant CSU rather than other schools of equal caliber and paying the required tuition and fees.

144.    These express and implied promises and representations made by Defendant CSU must be enforced to prevent substantial injustice to Plaintiff.

145.    Based on the foregoing, Defendant CSU is liable to Plaintiff based on Promissory Estoppel.

146.    As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

147.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A SIXTH CAUSE OF ACTION

### Injunctive Relief

### (Against Colorado State University, Colorado State University Board of Governors, and Ms. Lindy Henson in her individual capacity )

148.    Plaintiff repeats every prior allegation as if fully set forth herein.

149.    Based on the aforementioned facts and circumstances, Defendants CSU and Ms. Lindy Henson, in her individual capacity, removed Plaintiff's Good Standing from the School after an incomplete and discriminatory investigation and hearing conducted by the School.

150.    Ms. Lindy Henson was the individual that sanctioned Plaintiff and upon information and belief, would be able to remove the sanction from Plaintiff's academic record.

151.    Plaintiff demands that the Loss of Good Standing and any other disciplinary sanctions be removed from Plaintiff's academic records at the School.

### PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

(i)      on the first cause of action for violation of Title IX of the Education Amendments of 1972, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(ii)     on the second cause of action, pursuant to 42 U.S.C. § 1983, for violation of the Fifth and Fourteenth Amendment Procedural Due Process, a judgment awarding Plaintiff

damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iii)    on the third cause of action for breach of contract, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iv)    on the fourth cause of action for breach of the covenant of good faith and fair dealing, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(v)    on the fifth cause of action for promissory estoppel, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(vi)    on the sixth cause of action for injunctive relief, Plaintiff requests, pursuant to 28 U.S.C. § 2201, a declaration that: (i) the outcome and findings made by Colorado State

University be reversed; (ii) Plaintiff's reputation be restored; (iii) Plaintiff's disciplinary record be expunged; (iv) the record of Plaintiff's loss of good standing from Colorado State University be removed from his education file; (v) any record of the complaint against Plaintiff be permanently destroyed; (vi) Plaintiff's good standing with Colorado State University be immediately reinstated; and (vii) Colorado State University's rules, regulations and guidelines are unconstitutional as applied; and

(vii)    awarding Plaintiff such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Plaintiff herein demands a trial by jury of all triable issues in the present matter.

Dated this 22nd day of October, 2020.

KISHINEVSKY & RAYKIN

*/s/ Igor Raykin*
Igor Raykin, Esq.
2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: (720) 767-1846
igor@coloradolawteam.com

*/s/ Alan Davis*
Alan Davis, Esq.
2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: (720) 523-8106

*Attorneys for Plaintiff John Doe*